IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| COLLEEN STUART, JANA HARDEN, ) <br> AND JENNIFER CROSS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF TOPEKA, KANSAS, AND ) <br> BRYAN WHEELES, in his individual ) <br> capacity, ) <br> ) <br> Defendants. ) <br> ) | Case No. _____ <br><br> **JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiffs, Captain Colleen Stuart ("Stuart"), Captain Jana Harden ("Harden") and Lieutenant Jennifer Cross ("Cross"), allege the following against Defendants City of Topeka, Kansas and Bryan Wheeles ("Wheeles"):

## PARTIES

1. Plaintiffs are female police officers employed by Defendant Topeka and residents of Kansas.

2. Defendant Topeka is a municipality in Kansas and an employer within the meaning of Title VII of the 1964 Civil Rights Act, 42 U.S.C. Section 2000e, *et seq.*, ("Title VII").

3. All the acts, conduct and omissions of Defendant Topeka were performed by its agents, representatives and employees while in the course and scope of their agency or employment. Moreover, the Topeka Police Department ("TPD"), which operates under the supervision, control and management of Defendant Topeka, has a pattern and practice of gender

discrimination such that gender discrimination is a policy, custom or practice for the TPD/Defendant Topeka.

4. Defendant Topeka is responsible for the supervision, management, and control of the TPD, through which Defendant Topeka fulfills its policing functions.

5. Defendant Wheeles currently serves as Chief of Police for TPD. The claims against him are in his individual capacity only. He possessed and exercised the ultimate decision-making authority for each of the illegal failures to promote Stuart, Harden and Cross set forth below.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the acts complained of involve violations of Plaintiffs' rights under federal law, specifically Title VII and 42 U.S.C. Section 1983.

7. Venue is proper within this District because the events giving rise to Plaintiffs' claims occurred in this District, the unlawful employment practices are alleged to have been committed in this District, and the Defendants have sufficient minimum contacts with this District to be considered residents of the State of Kansas for the purposes of the federal jurisdiction and venue statutes.

## FACTUAL ALLEGATIONS

8. Stuart started her employment with Defendant Topeka on June 28, 1999. She was hired as a police officer in the TPD.

9. Stuart currently serves as a Captain.

10. On November 23, 2021, Defendant Topeka announced that Wheeles was the new Chief of Police for TPD. Qualified internal candidates for the position of Deputy Chief included

Stuart, Harden, Major Russell Klumpp, Captain Jamey Haltom (who is male) and Captain Michael Cross.

11.     On information and belief, Defendant Topeka told Klumpp he was not chosen for the position because it felt he would not be in step with the Chief's ideas and projects for the department on a going forward basis.

12.     On information and belief, Defendant Wheeles called Haltom on Sunday, November 28, 2021, and offered him the position. There were no job interviews for the position. On information and belief, Defendants allegedly promoted Haltom because he was believed to be in lockstep with the Chief's thinking and ideas for the department's future. In reality, however, Defendants chose Haltom because he is male.

13.     At the time Defendants promoted Haltom to Deputy Chief, he was less qualified and/or experienced than either Stuart or Harden in that he did not have a master's degree and had served in the rank of captain since 2018.

14.     On December 11, 2021, Stuart interviewed for a promotion to Major, along with Harden and Michael Cross (who is male). Although again, both Stuart and Harden (the female candidates) were more qualified and/or experienced, Defendants chose Michael Cross for the promotion on December 13, 2021.

15.     Stuart met with Wheeles and Haltom shortly before the announcement of Cross's promotion was made. Wheeles told Stuart that she was not being promoted at that time and that, at the level of Major and above, there needed to be a certain skill set to work "the politics."

16.     Later that day Stuart learned that Michael Cross had received the promotion. Stuart then met with Haltom to ask how it was possible that Michael Cross had been promoted over her and Harden. Michael Cross's reputation around the department was that he comes in late, stays

3

for an hour, leaves for several hours every day, takes credit for others' work (including Stuart's), and was, in general, not trusted.

17. Haltom told Stuart that when Senior Commanders were told Michael Cross was the choice for the promotion, the Senior Commanders voiced their concerns about trusting him. Yet Defendants still chose to promote Michael Cross over Stuart and Harden. Haltom said the first thing done was to sit Michael Cross down and have a "trust" discussion of how to build trust. Stuart remarked, "so there was so much mistrust in this person, but he was still promoted because he can work the politics?" Stuart asked what could be so deficient in her character that someone in whom they have NO trust in could be promoted over her. Haltom's response was "nothing."

18. Stuart noted that Wheeles had an opportunity to make an historic decision not once, but twice, and chose not to do so. Haltom asked, how was that? Stuart said the TPD has never had a female Deputy Chief and has only had one female Major, but Wheeles elected not to choose a woman for either position.

19. In fact, the TPD has had only one female Major in its history, and it has never had a female Deputy Chief.

20. While Stuart has worked with the TPD, she has been present when sexist comments have been made such as "you need to man up[;]" "people are watching you more because you are a woman, so don't let this show[;]" "you have resting bitch face[;]" and "I always thought you were just impersonable and a bitch because you never smiled or put yourself out there."

21. Defendant treats female officers differently than male officers to the detriment of those female officers and the department. Wheeles, as Chief, has circumvented the chain of command to request that Stuart's subordinate check information. Stuart's male subordinate circumvented the chain of command to go directly to a male Major above her.

4

22. In meetings at the department, a female Commander will bring up an idea and she will be quickly "talked over" and then a male Commander will restate the same idea and be hailed as a hero.

23. At one point in her career with Defendant, Stuart was placed within the Administrative Bureau as the Public Information Officer. Stuart managed social media and the mainstream media in interviews and press releases. She was expected to be available 24/7 and to come back to crime scenes to provide information whether she was on duty at the time or not.

24. After she was promoted to Captain in 2018, she no longer performed those duties.

25. Instead, a male Lieutenant was made Public Information Officer. Soon after his promotion, his title was changed to "executive officer to the Chief" or XO and he was given an exclusive office. He was also given far fewer responsibilities compared to Stuart and he was not expected to come back to crime scenes or perform work when he was not on duty.

26. Harden started her employment with Defendant Topeka on January 10, 2000, as a police officer.

27. Harden currently serves as a Captain.

28. Between the years of 2002 through 2006, on three different occasions, Defendant Topeka posted an open position for the Response Team (also known as the SWAT team). Harden passed the physical requirements as well as the scenario drills for the position. Harden was not selected for the team on any of these occasions despite her qualifications and experience and, to this day, Defendant Topeka has never selected a female to serve on the team. Officer McNeal told Harden she was not selected because the leadership of the team did not want a female.

29. In 2015, Harden was passed over for a promotion to Captain and the position was given to Michael Cross, even though Harden had served more bureaus in the department, had

more education and more time in rank. She was told that Michael Cross would bend rules and work in the gray area, and Harden was a "rule follower" and that was not what Defendant Topeka needed at that time.

30. During 2017 and 2018, Harden was assigned as the assistant bureau commander reporting to Major Gilchrist and Major Purney. During that time, Harden was asked on multiple occasions to discuss with Jennifer Cross her "unlady-like" conduct when she would sit with her legs apart or when she would have her hands behind her head "exposing" her chest area. Harden never had these conversations with Cross as this was discriminatory and inappropriate. At no time did Harden observe Cross behaving in a way which was provocative or inappropriate.

31. In early 2018, then Chief Bill Cochran called Harden to a meeting and advised her that she did not get the Major's position for which she had applied. The position went to Russ Klumpp. He said that to be considered for a senior position, Harden would need to get her master's degree. Harden then enrolled into the Communication and Leadership Master's program at Washburn University. She excelled at her classes and graduated in December 2020 with her master's degree.

32. On November 29, 2021, Defendant announced that Captain Jamey Haltom was now the new Deputy Chief. There had been no hiring process for this selection. Haltom is male, had only served in three bureaus as a commander, did not have a master's degree, only one command school and his rank as Captain had only begun in 2018.

33. In early December 2021, Harden applied for the Major position along with Stuart and Michael Cross.

34. On December 13, 2021, Harden was called to a meeting with Defendant Wheeles and Haltom. They said she did "an outstanding job through the entire process, had an excellent

6

interview and did outstanding work throughout the entire process in the last year" and that the interview panel participants said she was promotable (the only choices for the panel were "promotable" or "not promotable"). Harden was then told that she was not being offered the job. She later found out Defendants awarded the promotion to Michael Cross. Haltom later told Harden that "the elephant in the room" was why "Mike" got the job.

35. Cross started her employment with Defendants as a police officer on March 29, 2004.

36. She currently serves as a Lieutenant.

37. Cross applied for a position as Captain in early 2018. She was not selected but Stuart and Haltom were both promoted. On February 14, 2018, Cross met with then Chief Bill Cochran and them Deputy Chief, Defendant Wheeles. When Cross asked why she was not selected, they told her it was because she did not have a master's degree. When Cross responded that Haltom did not have a master's degree and that she had a more well-rounded resume, they said it was "just his time" and provided no further information. Cross went on to obtain a master's degree in November of 2020.

38. In August 2018, she attended a concert with a large group of dance mothers. One of the dance teachers and Cross were invited on stage. Cross did a front handspring on stage. A video of the dance was loaded to social media, and Cross was reprimanded that her online social media conduct was "unbecoming" of a commander. Harden was directed to speak to Cross about this incident. After that conversation, Chief Cochran was shown on social media cross-dressing as Cher, with no discipline. Likewise, Lieutenants Munoz and Trimble (both male officers) repeatedly engaged in conduct online that reflected poorly on the police department. Neither was reprimanded or disciplined.

39. In May 2019, Cross had begun work on her master's degree. Haltom told her it was brought to his attention that she was using her on-duty time to work on her degree and that she needed to ensure that it wasn't affecting her work. Male officers, including Jerry Monasmith, Michael Cross and Joe Perry, were not similarly questioned about doing similarly their schoolwork using on-duty time.

40. In November 2019, Cross was once again selectively addressed regarding her conduct on social media. She was told she had been the top candidate to take the Public Information Officer/Executive Officer spot until she made a FaceBook post that allegedly left the front office questioning if she would be a bad representative for the police department. Instead, Lieutenant Munoz was placed in the position. The scrutiny Defendant focused on Cross was completely different from Defendant's treatment of Lieutenant Munoz, as his online conduct revealed far more egregious behavior.

41. Throughout 2019, Cross approached Haltom, her direct supervisor, about Lieutenant Jerry Monasmith continuing to circumvent her in the chain of command and for his unprofessional conduct towards her which was creating a hostile work environment. Cross was tired of being treated as incompetent. She met with both Stuart and Harden about her frustration at being treated as incompetent, being cut out of the chain of command with her subordinates and Haltom's refusal to address these issues. This situation became so bad that in October 2019 Cross met with Jacque Russell in Human Resources about Monasmith and the lack of support from Haltom.

42. Cross applied for the Captain's position in December 2021, but Lieutenants Monasmith and Jones (both males) were given the promotion. She was told that the decision was based on a review of personnel files, resumes, and input from the interview panel. Both Jones

8

and Monasmith were less qualified than Cross, however. Jones had 24 hours towards his master's degree, Monasmith had just completed his in December of 2021 and both males had less experience and less institutional knowledge than Cross. Cross had previously trained Monasmith when he came to the criminal investigation bureau.

43. In Spring of 2022, Cross made a complaint of a hostile work environment and bullying to Defendant Topeka's human resources after police officers failed to comply with dress code requirements during required training sessions and then jumped the chain of command about the issue and were allowed by Cross's supervisors to undermine her authority. Defendant Topeka found Cross's complaint was substantiated and that Cross's authority had been improperly undermined.

## Count I – Gender Discrimination in Violation of Title VII Against Defendant Topeka

44. Plaintiffs incorporate by reference each of the paragraphs set forth above as though fully set forth herein.

45. Defendant Topeka discriminated against Plaintiffs by failing to promote them based on their sex or gender. Plaintiffs' gender was a motivating factor in Defendant's failure to promote each Plaintiff even though Plaintiffs were more qualified for the positions than the male employees who were promoted.

46. Defendants have engaged in a pattern and practice of gender discrimination.

47. As a direct and proximate cause of Defendant Topeka's discrimination, Plaintiffs have incurred and will continue to incur damages, including but not limited to past and future lost wages and benefits, and emotional distress.

48. Defendant Topeka acted with malice towards Plaintiffs or was recklessly indifferent to their federally protected rights such that they are entitled to punitive damages.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendant Topeka, for a finding that they have been subjected to unlawful discrimination as prohibited by Title VII; for an award of compensatory and punitive damages, for their costs expended, for their reasonable attorneys' fees, and for such other and further relief as this Court deems just, proper and equitable.

### Count II – Violation of 42 U.S.C. Section 1983 Against Defendant Topeka

49. Plaintiffs incorporate by reference each of the paragraphs set forth above as though fully set forth herein.

50. By engaging in the above-described conduct, Defendant Topeka, acting under color of state law, deprived Plaintiffs of equal protection under the law, as guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983, because of their sex/gender.

51. Defendant Topeka/TPD's illegal discrimination against female employees and/or its disparate treatment of female employees was a policy, custom or practice of Defendant Topeka/TPD such that it is liable for the acts/omissions of Defendant Topeka's agents and employees.

52. As a direct and proximate cause of Defendant Topeka's violation of the Constitution, Plaintiffs have incurred and will continue to incur damages, including but not limited to past and future lost wages and benefits, and emotional distress.

53. Defendant Topeka and its agents acted with malice towards Plaintiffs or was

recklessly indifferent to their federally protected rights such that they are entitled to punitive damages.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendant Topeka, for a finding that they have been subjected to unlawful discrimination as prohibited by Section 1983; for an award of compensatory and punitive damages, for their costs expended, for their reasonable attorneys' fees, for equitable relief, and for such other and further relief as this Court deems just, proper and equitable.

### Count III – Violation of 42 U.S.C. Section 1983 Against Defendant Wheeles (in his individual capacity)

54. Plaintiffs incorporate by reference each of the paragraphs set forth above as though fully set forth herein.

55. By engaging in the above-described conduct, Defendant Wheeles, acting under color of state law, deprived Plaintiffs of equal protection under the law, as guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. Section 1983, because of their sex/gender.

56. As a direct and proximate cause of Defendant Wheeles' violation of the Constitution, Plaintiffs have incurred and will continue to incur damages, including but not limited to past and future lost wages and benefits, and emotional distress.

57. Defendant Wheeles acted with malice towards Plaintiffs or was recklessly indifferent to their federally protected rights such that they are entitled to punitive damages.

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendant Wheeles, for a finding that they have been subjected to unlawful discrimination as prohibited by Section 1983; for an award of compensatory and punitive damages, for their costs expended, for their reasonable attorneys' fees, for equitable relief, and for such other and further relief as this Court deems just, proper and equitable.

### DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Kansas City, Kansas as the trial site for this case.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable in this Complaint.

Respectfully submitted,

**EMPLOYEE RIGHTS LAW FIRM**
**LAW OFFICE OF MARK A. JESS**

_____/s/ Mark A. Jess_____
Mark A. Jess, MO #37946
Christie Jess, MO #44919
4 E. Franklin Street
Liberty, MO 64068
816-474-4600
816-474-4601 Facsimile
Email:  mark.jess@employeerightslawfirm.com
             christie.jess@employeerightslawfirm.com

and

**PLAYTER & PLAYTER LLC**

*/s/ Eric S. Playter_____*
Eric S. Playter, KS #23027
Chris R. Playter, MO #65109
7608 Raytown Road
Kansas City, MO 64138
(816) 666-8902 (Main)
(816) 666-8903 (Fax)
eric@playter.com
chris@playter.com
**ATTORNEYS FOR PLAINTIFF**

13