IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COLLEEN STUART, et al.,                    )
                                           )
Plaintiffs,                                )
                                           )
v.                                         )          Case No. 23-CV-2021-TC
                                           )
CITY OF TOPEKA, KANSAS, et al.,            )
                                           )
Defendant.                                 )

## DEFENDANT'S RENEWED MOTION AND MEMORANDUM IN SUPPORT FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. PROC. 50(b) AND MOTION AND MEMORANDUM IN SUPPORT FOR NEW TRIAL PURSUANT TO FED. R. CIV. PROC. 59

Defendant City of Topeka, Kansas ("COT"), pursuant to Fed. R. Civ. Proc. 50(b) and 59, by and through their attorneys of record, J. Phillip Gragson and Kara L. Eisenhut of Henson, Hutton, Mudrick, Gragson & Vogelsberg, LLP, hereby submits this Motion and Memorandum in Support for Judgment as a Matter of Law and for a new trial against Plaintiffs, Colleen Stuart and Jana Harden. In support of this motion, Defendant states as follows.

## I.      STATEMENT OF RELIEF SOUGHT

Pursuant to Rule 50(b), Defendant renews its Rule 50(a) oral motions for judgment as a matter of law made after close of Plaintiffs' evidence and renewed after the close of all evidence and before submission to the jury on the verdicts finding the COT discriminated against Colleen Stewart and Jana Harden based on sex when it did not promote them to the position of Major in 2021 (Doc. 113, parts A under both Plaintiffs) due to insufficiency of the evidence and the unduly prejudicial effect of allowing testimony and evidence previously ruled on Summary Judgment (Doc. 77) to be "immaterial" and not supportive of discriminatory intent. Defendant also restates and incorporates its objections made at trial, and in its Motion in Limine, points III.a-f. (Doc. 90),

1

Defendant's Response to Plaintiffs' Motion in Limine, point 1 (Doc. 93) and its Motion to Reconsider (Doc. 99) to those witnesses allowed to testify despite the Court's ruling on Summary Judgement: Defendant requests this court enter a judgment finding the evidence was insufficient under the law to support Plaintiffs' claims of sex discrimination and grant judgment in favor of Defendant, thereby vacating the jury verdict entered on October 19, 2024 (Doc. 113).

Alternatively, if the Court does not grant judgment in favor of Defendants, pursuant to Rule 59(a), Defendant seeks a new trial on the issue of whether the Defendant violated Title VII when it did not promote one of the two Plaintiffs to the position of Major in 2021 and thereby vacating the jury verdict entered on October 19, 2024 (Doc. 113).

## II.   NATURE OF THE MATTER

After a four-day jury trial, over a half hour of jury instruction from the Court and less than two hours of deliberation, the jury rendered a verdict in favor of both Plaintiffs for one major position. Based on the evidence presented during the jury trial, the court should find that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs Colleen Stuart and Jana Harden on their failure to promote claims for gender discrimination under Title VII of the Civil Rights Act of 1964.

## III.   LEGAL STANDARDS

### A.  The Legal Standard on Rule 50(b).

After trial, if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FRCP Rule 50(a).

"If a court does not grant the party's Rule 50(a) Motion, that party "may file a renewed motion for judgment as a matter of law" post-trial and include an alternate motion for a new trial under Rule 59." *Miller v. CNH Industrial America LLC*, 2024 WL 663527, *1 (D. Kan. 2024). "When reviewing a renewed motion, a court views the record in the light most favorable to the nonmoving party and does not "weigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusions for that of the jury."" *Jensen v. W. Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020). The standard for a motion for judgment as a matter of law is the same as for a motion for summary judgment. *Dupree v. Younger*, 143 S.Ct. 1382, 1387 (2023).

Counsel for Defendant moved for judgment as a matter of law pursuant to FRCP 50(a) (and incorporating its Motion in Limine, points III.a-f., (Doc. 90) and its Motion to Reconsider (Doc. 99) at the conclusion of Plaintiffs' case-in-chief, which this Court denied. Counsel for Defendant again moved for judgment as a matter of law after the close of all evidence, which this Court also denied.  Defendant now renews those objections pursuant to FRCP 50(b).  Taking all evidence into account, COT is "entitled to judgment as a matter of law because the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Deters v. Equifax Credit Info. Servs., Inc*., 202 F.3d 1262, 1268 (10th Cir. 2000).

**A.  The Legal Standard on Rule 59.**

A court may "grant a new trial on all or some of the issues… after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  "Trial courts have broad discretion in deciding whether to grant a new trial." *Miller*, 2024 WL 663527 at *1 *citing McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). The courts discretion is not unlimited however, in that "a new trial is warranted only where "errors [at trial] created prejudice and affected a party's substantial rights."

3

*Osterhout v. Bd. Of Cnty. Comm'rs of LeFlore Cnty.*, 10 F.4th 978, 988 (10th Cir. 2021). The party seeking the new trial has the burden of proving harmful error occurred. *Nosewicz v. Janosko*, 857 Fed. App'x 465, 468 (10th Cir. 2021).  When the court reviews a motion for a new trial, it must draw all inferences in the light most favorable to the non-moving party. *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019).

Respectfully, the Court committed error at trial by allowing several improper "me too" and related witnesses to testify when this Court already determined in its Memorandum and Order on summary judgment (Doc. 77) such evidence was either immaterial or not supportive of gender discriminatory intent (rather the evidence was nepotism-like complaints).  Such evidence severally prejudiced the defendant and its right to properly and fairly defend itself against the Plaintiffs' claims. Defendant submits that allowing nepotism-like complaints under the guise of valid "me too" evidence unfairly mislead the jury as to what is discrimination under Title VII to the point of rendering an invalid verdict.

## IV.   <u>ARGUMENT</u>

### A.  FRCP 50(b)

Defendant COT is entitled to judgment as a matter law on both verdicts because Plaintiffs failed to show pretext. After Plaintiffs' case in chief, Defendant orally moved for a "directed verdict," arguing that there was insufficient evidence that gender discrimination caused Bryan Wheeles not to promote either plaintiff to the position of Major in 2021. Defendants again argued against the improper "me too" witnesses, incorporated their arguments made in Defendant's Motions in Limine (Doc. 90) and Motion to Reconsider (Doc. 99), incorporated their previous objections made during Plaintiffs' case in chief, and argued that the Plaintiffs had failed to provide any evidence of pretext. The Court denied Defendant's motion. The Defendant renewed their Motion at the end of their case-in-chief and the Court again denied that motion.

Defendant renews its Rule 50(a) motion and specifically the argument that Plaintiffs have failed to prove pretext either via "me too" evidence or through the testimony of Jamey Haltom's alleged conversation with the decision-maker that the person he selected for Major had some reputation issues among his peers.

The standard that this Court must use to consider this Rule 50(b) motion is the same as for a motion for summary judgment. For purposes of this motion, defendants do not contest that plaintiffs' established a prima facie case of discrimination and that the burden shifted to the City to prove a legitimate, nondiscriminatory reason for its hiring decision. The City showed that it had a legitimate reason for selecting Michael Cross through Bryan Wheeles' testimony that Michael Cross was selected for his Military Service; his operational experience; command experience; administrative experience within the TPD; his superior experience in difficult personnel matters; his proven track record of making good operational and tactical decisions; his good reputation within the community; his excellent public speaking ability and ability to interact with the public; his proven track record of leadership at various ranks in his career, and his excellent project/assignment completion history.

Upon the City's showing, the *McDonnel Douglas* framework disappeared and Plaintiffs assumed the burden of persuading the jury that the City's proffered nondiscriminatory reasons for promoting Michael Cross were pretext for intentional gender discrimination. *Romero v. City of Albuquerque*, 190 Fed. Appx 597, 602 (10th Cir. 2006). A showing of pretext does not require a plaintiff to offer any direct evidence of actual discrimination. *Bryant,* 432 F.3d at 1125. An employee may show pretext based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief. *Morgan v. Hilti Inc.,* 108

F.3d 1319, 1323 (10th Cir.1997).

To show pretext, the disparity of qualifications of those who were and were not hired must be present. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1319 (10th Cir.1999), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("[W]e emphasize that an employer does not violate Title VII by choosing between *equally* qualified candidates, so long as the decision is not based on unlawful criteria.... The disparity in qualifications must be 'overwhelming' to be evidence of pretext."). Some subjectivity is expected in every hiring decision. Pretext is typically inferred from the employer's use of subjective evaluation criteria in the hiring process "only when the criteria on which the employers ultimately rely are *entirely* subjective in nature." *Ford v. Jackson national Life Insurance Company,* 45 F.4th 1202, 1218 (10th Cir. 2022).

"Generally, we will infer pretext based on a comparison between a plaintiff's qualifications and those of successful applicants only when the plaintiff demonstrates an "overwhelming merit disparity." *Santana*, 488 F.3d at 865 (internal quotations and citation omitted). Put differently, we will infer pretext only when the plaintiff can *"assure us that the plaintiff is better qualified than the other candidates for the position." Id.* (emphasis added) (quoting *Barnhart*, 349 F.3d at 1267). A plaintiff must do more than offer "mere self-serving appraisals." *Hall*, 536 F.3d at 620 (quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007))." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1219 (10th Cir. 2022).

The plaintiffs provided no other evidence than their own subjective testimony and the resumes of themselves and Michael Cross. A review of Michael Cross' resume in comparison to Plaintiffs does not show an overwhelming merit disparity by any means. In fact, it proves that he was equally as qualified as the two Plaintiffs. (See Pl. Exs. 25 and 39 and Def's Ex. 811).

While the Plaintiffs had several witnesses testify, none of them testified about Michael Cross or his credentials, other than his wife, Jennifer Cross.  Jennifer Cross testified that Michael was qualified for the 2021 Major promotion. While she testified that the Plaintiffs were "more" qualified, "more" does not amount to an overwhelming merit disparity. "Minor differences in qualifications will not demonstrate pretext because "it is not our role to act as a super personnel department that second guesses employers' business judgments." *Ford*, 45 F. 4th at 1219. "Importantly, an employee's ***own belief that she was the most qualified candidate for a position is not enough to show pretext***." *Id.* (citing *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008)) (emphasis added). There is simply no evidence to support a finding of an "overwhelming merit disparity" because there was not one.  As such, Plaintiffs were unable to prove pretext.

 Not only did Plaintiffs not offer any further objective evidence of their "overwhelming" qualifications, the Defendant presented evidence through testimony that supported Michael Cross' qualifications for the selection to Major, including the testimony of former Chief of police William Cochran, former Chief of Police, Bryan Wheeles, former city manager, Brent Trout, Shawnee County District Attorney, Michael Kagay (who testified that Michael Cross gave the best job interview that he had heard and he has heard many job interviews), and current Interim Chief of Police, Jamey Haltom.

At trial, Bryan Wheeles testified about all of the reasons that he chose Michael Cross over the Plaintiffs.  While the plaintiffs spent a large amount of time testifying as to why they believed they were more qualified than Michael Cross, none of Bryan Wheeles' stated reasons for his choice were discredited by the Plaintiffs at trial.  They simply testified that theirs were better. The only purported inconsistency that the Plaintiffs were able to provide is that of Jamey Haltom testifying that he told Bryan Wheeles before the promotion that other TPD employees may have issues with

Michael Cross or his reputation. Bryan Wheeles did not recall being told that by Jamey Haltom. Given the conversation allegedly occurred over three and a half years ago, it is not unreasonable for someone to not remember. One non-corroborating statement about what someone said to another over three and a half years ago is not sufficient to warrant a finding of pretext.  Much more significantly and assuming *arguendo*, Haltom did tell Wheeles about Michael Cross's reputation, it did not change Haltom's feelings on who should be promoted, because he testified that he recommended Michael Cross for promotion when Wheeles asked for his input. A reasonable person would not assume that the reputation issue was severe enough for concern when the person telling him about the reputation concerns is also recommending the candidate for promotion. More importantly, such a conversation is not evidence that Bryan Wheeles promoted Michael Cross instead of the Plaintiffs because of their gender. At worst, its evidence that he did not consider the reputation concerns to be paramount in filling that position.

Simply put, none of the evidence supports a finding of pretext, and the fact that the jury made such finding clearly indicates their confusion on the issues due to the Courts error in allowing prejudicial testimony to be provided to the jury, as will be further discussed below.

### B.  FRCP 59

"A new trial is warranted only where "errors [at trial] created prejudice and affected a party's substantial rights." *Osterhout v. Bd. Of Cnty. Comm'rs of LeFlore Cnty*., 10 F.4th 978, 988 (10th Cir. 2021). The party seeking the new trial has the burden of proving harmful error occurred. *Nosewicz v. Janosko*, 857 Fed. App'x 465, 468 (10th Cir. 2021). This Court erred by allowing the testimony of Jennifer Cross in its entirety, the testimony of Kimberly Hanika in its entirety, and certain portions of Jerry Monasmith's, Jacque Russell's and Shawn Maisberger's testimony.

"The threshold inquiry on the admissibility of evidence is its relevance defined as "having

any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216 (2007) *citing* to Fed. R. Evid. 401. "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Prior to trial, the parties filed several Motions in Limine (Docs. 90, 92). The Court erred in denying two of the Defendant's Motions which created extreme prejudice against Defendant's rights. Those objections were renewed multiple times at trial and incorporated in Defendant's Rule 50(a) verbal motion, and again denied. In their Motions in Limine, Plaintiffs sought to introduce evidence of other female officers' experiences throughout their careers at the TPD ("me too" evidence) and Defendant sought to keep the evidence out.  Specifically, the Defendant sought to keep out the testimony of Donna Eubanks, Kimberly Hanika, and Jennifer Cross. In their Motions in Limine, Defendant further sought an order excluding any and all evidence of discrete acts of discrimination that occurred before 300 days from the filing of the EEOC charge, which in this case was July 27, 2020.

1. *The Court allowed improper "me too" evidence to be presented to the jury which error was irreparably harmful to Defendant.*

In their Motion in Limine, Plaintiffs cited *Sprint/United management Co. v. Mendelsohn*, to support their argument that that other female officers' experiences are admissible.  Plaintiffs argued that the "me too" evidence was admissible to show the Defendant's intent or state of mind in an attempt to show pretext.  As noted by Judge Robinson, "anecdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.'" *Mendelsohn,* at 340.

In *Mendelsohn*, the parties came to define "me too" evidence as evidence of alleged **discrimination** by employees other than the Plaintiffs. However, the Court held that you could only use "me too" evidence if the witness providing the evidence was "similarly situated" to the Plaintiff. *Id.* at 1207. The Court went on to define similarly situated as 1) having the same decision maker, and 2) being close in time to Plaintiff's alleged discrimination. *Id.* at 1207. The *Mendelsohn* Court allowed allegations of "me too" evidence within the same chain of command as the Plaintiff and disallowed allegations outside of the chain of command. *Id.* at 1208.

a. *Jennifer Cross' testimony*

In the present case, the Court granted Defendant's summary judgment for any alleged failure to promote that occurred prior to July 27, 2020, due to Plaintiffs failure to exhaust administrative remedies, which included Jennifer Cross' claim for failure to promote her to Captain in 2018 (Doc 77, p. 28, FN 14). It further dismissed Jennifer Cross' claim for failure to promote to Captain in 2022 due to her failure prove pretext, stating:

> "the court merely notes that although Cross has identified instances where she has been treated differently by other individuals and identified inappropriate remarks, Cross has failed to argue that such evidence is sufficient to show pretext. And isolated comments or remarks are insufficient to show pretext unless they are tied to the decision. See *Antonio*, 458 F.3d at 1184; *Plotke v. White*, 405 F.3d 1092, 1107 (10th Cir. 2005) (noting that, at the pretext stage, the plaintiff "simply must show a nexus between the allegedly discriminatory statements and the employer's decision.") Moreover, comments made by non-decision makers are not material to show pretext. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)." (Doc. 77 p. 30).

This Court's order granting summary judgment of Jennifer Cross's claims further stated, "in any event, Cross has wholly failed to show or make any argument that certain actions or statements by others show pretext for Wheeles' decision." (Doc. 77, p. 30).

Despite the Court's previous rulings, Defendant's multiple objections during Cross' testimony, and Defendant's oral motion to strike her testimony at its conclusion, Jennifer Cross

was allowed to testify at trial as a "me too" witness. The main reason in disallowing "me too" evidence that cannot be tied to the promotion at hand is an effort to avoid mini trials within a trial. *Hinson v. UMB Bank, N.A.*, 2010 WL 2519987, *2 (D. Kan. June 15, 2010) (not reported) (finding that allowing evidence about promotions of others to regional positions is irrelevant to pretext concluding that allowing such irrelevant evidence is akin "to engage in five mini-trials" which would "confuse the jury and unduly delay this case."); *Maes v. Leprino Foods Company, Inc.*, 2017 WL 1077638, *2 (D. Co. Mar. 22, 2017)  As, for all intents and purposes, the jury has to determine if they believed the "me too" evidence amounted to discrimination for it to properly be used as "me too" evidence.   This Court determined that Jennifer Cross was a proper "me too" witness because the 2022 promotion involved the same decision maker and was close in proximity to the 2021 Major promotion at issue. This court erred in that it failed to consider that a "me too" witness testifies to "alleged discrimination."  This is discrimination that is being alleged that has not yet had the chance to be put in front of a jury to determine if it actually did amount to discrimination, hence, the mini trials within the trial. This court further erred by allowing Ms. Cross' testimony because it had already ruled that the testimony provided as "alleged discrimination" does not amount to evidence of discrimination (Doc. 77, p. 30). Consequently, having made that determination but then allowing such evidence to be presented to the jury as "alleged discrimination" was not only against the law of the case doctrine (See Doc. 99, p. 3), but extremely prejudicial, confusing and misleading for the jury. It was further unfair to Defendant who was prevented from telling the jury that the Court had already ruled that Ms. Cross' claim had been dismissed on summary judgment (See Doc. 96 at p.3).

Further showing the harmful error that Defendant's faced by allowing Jennifer Cross to testify, Plaintiffs' counsel advised Defendant's counsel in conference after trial that they had

spoken with the jury foreman.  According to the jury foreman, the jury found Jennifer Cross'

testimony to hold significant weight and advised that her testimony was considered frequently

during their deliberations, further proving that her irrelevant nepotism-based complaints allowed

in through her testimony did nothing but confuse and mislead the jury.

*b.  Jerry Monasmith's lack of discipline testimony*

The court further erred by allowing Jennifer Cross, Jacque Russell, Shawn Maisberger,

Bryan Wheeles, William Cochran, and Jerry Monasmith to testify about Jerry Monasmith's lack

of discipline despite Defendant's objections. Plaintiffs presumably presented this evidence to

show that the City has a pattern and practice of gender discrimination (e.g. not disciplining men

but disciplining women for similar violations of policy). However, this court dismissed the

Plaintiffs' pattern and practice of gender discrimination claim on summary judgment. (Doc. 77 at

32). Thus, allowing such evidence was not only a violation of the Law of the Case Doctrine, but

also severely prejudiced Defendant and confused the jury.

Further, in the Memorandum and Decision (Doc. 77), this Court stated, "Cross also

contends that Monasmith was a bully and harassed her but that he was not disciplined. With

respect to her complaints about Monasmith, the 2015 incident in the parking lot was never

reported. The other incident occurred in April 2022 which was after the captain selection." The

2021 Major selection at issue during trial was in December 2021, which was also before the

alleged lack of discipline incident involving Monasmith in April 2022, meaning it was also

irrelevant to the claims being presented to the jury. As the Court already held that this lack of

discipline was not relevant, the Court erred in allowing multiple witnesses to testify about the

incidents and the lack of discipline that Monasmith received. It was unduly prejudicial to

Defendant, confusing and misleading to the jury and caused Defendant irreparable harm.

c.   *Kimberly Hanika*

As to Hanika, the Court previously found that,

> "Plaintiffs argue that Hanika's treatment of Jeralyn Wheeles[1] and Chief
> Wheeles shows that he has discriminatory intent. (Doc. 66 at 2.) Plaintiffs
> fail to fully develop this argument. The uncontroverted facts are that Hanika
> had a conflict with Jeralyn Wheeles which lead to allegedly retaliatory
> treatment. Plaintiffs have not put forth evidence that Wheeles has a
> discriminatory animus towards women such that his explanation for his
> decision is called into doubt. **Rather, the evidence is that the alleged
> retaliation stemmed from a conflict between Jeralyn Wheeles, the
> Chief's wife, and Hanika; not because Hanika was a woman**."

Bold added. (Doc. 77, p. 26-27.)

In granting summary judgement, the Court made a legal finding that the factual testimony

of Hanika was insufficient as a matter of law to establish evidence of discrimination and that is the

law of this case. As set forth in *Black v. Union Pacific Railroad Company* 2024 WL 3741404, *5

(D.Kan. 2024): The court further notes that it applies the law of the case doctrine. "When a court

enunciates a rule of law in the course of a given case, the law of the case doctrine generally requires

the court to adhere to the rule throughout the proceedings." Citing, *Major v. Benton*, 647 F.2d 110,

112 (10th Cir. 1981).

Before trial, this Court further held Kimberly Hanika's claims were only supported by her

own personal opinions and found that "the evidence in this case clearly shows that women,

including Plaintiffs, have been consistently promoted." (Doc. 77, p. 33).   Despite this ruling,

Defendant's objections, and this Court's sidebar ruling at trial that Hanika was not a proper "me

to" witness, the Court allowed Hanika to testify to the jury about this incident as if it was

discrimination, which again, was extremely and unduly prejudicial to defendant, and mislead and

confused the jury.

---

[1] Jeralyn Wheeles is a female officer and was not a decision maker in the 2021 Major promotion decision that was
tried to the jury. (Footnote not in original.)

For the same reasons, the Court further erred by allowing Jacque Russell, the director of Human Resources, to discuss the Hanika investigation, as well as the Monasmith discipline issue, including allowing her to discuss her reported findings with the jury, despite the Court's ruling on sidebar that the actual reports she prepared on the same were inadmissible due to being more prejudicial than probative. The prejudice to Defendant became twice as prevalent when the Court also allowed Shawn Maisberger, current Deputy Director of Human Resources, to testify regarding the Hanika investigation and the Monasmith discipline issue and Human Resource's reported findings---all evidence which had been found to be irrelevant in Doc. 77. Allowing Russell and Maisberger to testify about their Human Resource's report and summarize their findings to the jury while ruling that the actual report was more prejudicial than probative was further error by the Court and caused extreme and undue prejudice to defendant, and mislead and confused the jury.

   II. *The Court allowed improper evidence of discrete acts occurring prior to July 27, 2020-*
*-300 days before plaintiffs' EEOC charge of discrimination.*

   At trial the court allowed testimony by several individuals about alleged incidents of mistreatment or discrimination of women in the TPD that occurred before July 27, 2020 including, but not limited to, testimony about the Captain promotion from 2018 that Cross claims she should have gotten, the Hanika incident from 2018 which Bryan Wheeles had nothing to do with, and the Monasmith parking lot comment to Jennifer Cross in 2015 in violation of the law of the case doctrine and this court's precedent. Evidence of discrimination by other supervisors is neither per se prohibited nor admissible, but is fact based and depends in part on its relationship to the circumstances and theory of case. *See Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008).  The Court justified allowing this testimony because it pertained

to Bryan Wheeles even though it had nothing to do with decisions he made (as a Chief or decision-maker), occurred before he became the decision-maker, or related to how his wife treated other officers. Further, it was not relevant to the issues and amounted to an attack on Bryan Wheeles's character in violation of Fed. R. Evid. 404.

A bulk of the evidence allowed before July 27, 2020 included the Hanika incident that occurred in 2018. Brent Trout testified that there was a Chinese wall preventing Bryan Wheeles from receiving any discipline relating to his wife, Jeralyn Wheeles. William Cochran testified that he knew of that directive but that he believed he would have at least discussed it with Bryan Wheeles. Due to his irrelevant testimony about an incident that occurred in 2018, it forced Bryan Wheeles to testify that he did not receive these reports, nor did he know anything about the recommended discipline proposed in them, which diminished his credibility and made it appear that he was lying to the jury. This evidence should never have been allowed, let alone should he have had to defend against it.

## V.    CONCLUSION

Due to the above stated reasons, this Court should grant Defendant's Motion for Judgment as a Matter of Law, or in the alternative, grant Defendant's Motion for a New Trial, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ J. Phillip Gragson
J. Phillip Gragson, # 16103
Kara L. Eisenhut #27055
HENSON, HUTTON, MUDRICK,
GRAGSON & VOGELSBERG LLP
3649 SW Burlingame Road, Ste. 200
Topeka, KS  66611
Ph. (785) 232-2200; Fax (785) 232-3344
jpgragson@hhmglaw.com

keisenhut@hhmglaw.com
*Attorneys for Defendant*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was filed electronically via CM/ECF on this 17th day of October, 2024 and electronic notifications provided to:

Mark A. Jess, MO #37946
Christie Jess, MO #44919
mark.jess@employeerightslawfirm.com
christie.jess@employeerightslawfirm.com
Attorneys for Plaintiffs

Eric S. Playter, KS #23027
Chris R. Playter, MO #65109
eric@playter.com
chris@playter.com
Attorneys for Plaintiffs

/s/ J. Phillip Gragson, #16103
J. Phillip Gragson, #16103