IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| COLLEEN STUART, ET. AL., | |
| **Plaintiffs,** | |
| vs. | Case No. 23-cv-02021-JWB-RES |
| CITY OF TOPEKA, KANSAS, ET. AL., | |
| **Defendants.** | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL**

COME NOW, Plaintiffs, by and through undersigned counsel, and for their Memorandum in Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law and Motion for New Trial state as follows:

**I.  INTRODUCTION & NATURE OF THE MATTER**

The Court conducted a jury trial from September 16, 2024 through September 19, 2024. At the close of Plaintiffs' evidence and before the jury received the case, Defendant moved for judgment as a matter of law claiming insufficiency of the evidence, which this Court denied. The jury returned a verdict for Plaintiffs Colleen Stuart and Jana Harden on their claims of sex discrimination against Defendant City of Topeka ("COT"), awarding each plaintiff $200,000.00 in compensatory damages and indicating back pay and front pay for each plaintiff consistent with the evidence of same presented at trial. The Court entered said verdict on September 19, 2024. [DOC 113]. Defendant now requests this Court vacate said verdict and grant judgment as a matter of law for Defendant, alleging the same insufficiency of the evidence arguments previously considered and denied by this Court. Alternatively, Defendant moves for a new trial alleging judicial errors in admitting certain

1

"me too" evidence and evidence of other acts of discrimination based on mere conclusory statements that Defendant was prejudiced by its admission.

## II. QUESTIONS PRSENTED

1. Was there such a complete absence of evidence sufficient to support the jury's verdict such that the Court should vacate the jury's verdict and grant Defendant's Motion for Judgment as a Matter of Law?

2. In permitting certain testimony by Jennifer Cross, Jerry Monasmith, Kimberly Hanika, and Jacque Russell, was the Court's decision so arbitrary, capricious, whimsical, or manifestly unreasonable as to constitute an abuse of discretion?

3. If the Court did, in fact, abuse its discretion, has the Defendant established any basis or showing it was actually prejudiced by the evidence's admission?

## III. STANDARD OF REVIEW

### A. FRCP 50 Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a)(1) "removes from the jury a case only if there is either a 'complete absence of proof of an issue or issues material to the cause of action' or where 'there are no controverted issues of fact upon which reasonable men could differ.'" *In Re: Syngenta AG MIR 162 Corn Litigation*, 249 F.Supp.3d 1224 (D. Kan. 2017) (quoting *Martin v. Unit Rig. & Equip. Co., Inc.*, 715 F.2d 1434, 1438 (10th Cir. 1983). The Court, in making their determination, must not "weigh the evidence, pass on the credibility of the witnesses, or substitute [the Court's] conclusions for that of the jury. *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001) (quoting *Lockard v. Pizza Hut*, 162 F.3d 1062, 1068 (10th Cir. 1998). The Court must be vigilant to review the evidence in the light most favorable to the non-moving party. *See In Re Syngenta* (quoting *Martin*, 715 F.2d at 1438). A motion for a judgment as a matter of law must not be granted unless "the evidence points all one way and cannot be the basis of reasonable inferences which sustain the position of the non-

moving party." *Wolfgang v. Mid-America Mortorsports, Inc.*, 111 F.3d 1515, 1522 (10th Cir. 1997). Generally, the Tenth Circuit has indicated that verdicts for judgment as a matter of law "should be cautiously and sparingly granted." *Martin*, 715 F.2d at 1438 (quoting *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 951 (10th Cir. 1978).

### B. FRCP 59 Motion for New Trial

A motion for new trial must only be granted where trial errors occurred that "created prejudice and affected a party's substantial rights." *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F. 4th 978, 988 (10th Cir. 2021). Where the appellate court will review the trial court's function as the gatekeeper of evidence, they "review for abuse of discretion the manner in which the district court exercised its…gatekeeper role in making decisions whether to admit or exclude testimony." *Bulter v. AO Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). It will not "disturb a district court's ruling absent [its] conviction that it is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Id.*

## IV. ARGUMENT

### A. Defendant's Renewed Motion for Judgment as a Matter of Law Must be Denied as Defendant has failed to meet its high burden of establishing a complete absence of proof to support the jury's verdict.

Defendant's sole argument for judgment as a matter of law in its renewed motion is that, based upon the *McDonnell Douglas* burden shifting framework, there was insufficient evidence to prove pretext. Defendant's motion concedes that it does not contest plaintiffs' having established a prima facie case of discrimination. [DOC 119 at p. 5] ("defendants do not contest that plaintiffs' [sic] established a prima facie case of discrimination).

As a preliminary matter, Defendant's position is mistakenly reliant upon the *McDonnell-Douglas* framework that is not applicable to this Court's analysis. "[T]he three-part *McDonnell*

3

*Douglas* burden-shifting analysis is limited to the summary judgment context. Once there has been "a full trial on the merits, the sequential analytical model adopted from *McDonnell Douglas* ... drops out and we are left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against" the plaintiff because of his or her protected status." *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

However, whether applying this lesser burden or applying the *McDonnell-Douglas* framework, Plaintiff has submitted substantial evidence of pretext. Once an employer has identified a claimed non-discriminatory reason for its actions, the plaintiff "may succeed in [proving discrimination] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The plaintiff can make this showing using direct or circumstantial evidence. *U.S. Post. Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 n.3 (1983). In fact, circumstantial evidence is often "more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (*quoting Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n.17 (1957)).

The plaintiff "may not be forced to pursue any particular means of demonstrating that respondent's stated reasons are pretextual." *Patterson v. McLean Credit Union*, 491 U.S. 164, 188 (1989). Rather, the Tenth Circuit has recognized that a plaintiff may prove pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted). Among other types of evidence of pretext, a plaintiff may use evidence of prior treatment of

4

the plaintiff, the employer's practices toward other employees within the protected minority group, and procedural irregularities. *Zhou v. Pittsburg State Univ.*, 252 F. Supp. 2d 1194, 1218 (D. Kan. 2003) (citing *Simms v. Okla. ex rel Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999).

In addition, pretext may be inferred based on a comparison between a plaintiff's qualifications and those of the successful applicants. *Ford v. Jackson Nat. Life Ins. Co.*, 45 F. 4th 1202, 1219 (10th Cir. 2022). "Pretext may be inferred…from evidence that a plaintiff who was not promoted was more qualified than those employees who were promoted. *Rea v. martin Marietta Corp.*, 29 F.3d 1450 (10th Cir. 1994).

During the course of trial, the Plaintiffs presented substantial evidence from several different avenues recognized by the Tenth Circuit, including but not limited to, evidence of weaknesses and contradictions in Wheeles' purported justification for the Michael Cross promotion, prior treatment of the plaintiffs and other female employees, procedural irregularities, and disparity in qualifications.

**Weaknesses and Contradictions in the COT's Purported Justification**

Defendant's motion attempts to avoid the stark disparity in Michael Cross performance and qualification, discussed *infra*, by relying on Bryan Wheeles' testimony regarding the subjective criteria he claimed led to his selection of Michael Cross over Plaintiffs for the 2021 Major position. While Wheeles attempted to justify his selection by citing military service, operational experience, command experience, administrative experience, experience in difficult situations, good reputation, proven track record of leadership, and stellar interview [DOC 119 p. 5], the Plaintiffs presented an abundance of evidence and testimony establishing the weaknesses and contradictions to Wheeles' testimony.

To begin, Wheeles testified to Cross' good reputation and stated that he had no knowledge of reputational concerns or concerns about the trustworthiness of Michael Cross within the department. He doubled down on this position when he testified that his own Deputy Chief, Jamey Haltom, never

spoke to him about such issues regarding Cross. However, Jamey Haltom testified to the contrary. During his testimony, Haltom testified to Cross' reputation for coming in late, leaving early, and taking long lunches. He further testified that Cross had a reputation for taking credit for others' work. While Wheeles testified that Haltom never presented any of these concerns to him, Haltom contradicted that testimony stating he did speak with Wheeles. In addition to these specific concerns, Haltom testified he told Wheeles that he did not like Michael Cross as a commander before Wheeles promoted him to the Major position.

Similar to Wheeles' statements about Cross' reputation which were later contradicted by Haltom, Wheeles' statements concerning Cross' reputation in the community were also rebuffed. Following Wheeles' initial statements about community feedback concerning Michael Cross, his deposition was referenced and he admitted on the stand that the community member to whom he was referring had never even met Michael Cross. Instead, he admitted those statements from the community member were actually in reference to Cross' wife, Jennifer Cross. When asked if there were other community member statements that may actually apply, Wheeles was unable to cite to any community member or any specific statements.[1]

Regarding Michael Cross' commander and administrative experience, Wheeles later testified that both Plaintiffs had more commander experience across bureaus than Cross. This was confirmed by the testimony of Jennifer Cross and Jamey Haltom as well, and corroborated by Exhibits 1 and 40 which showed the Plaintiffs' commander rank history across bureaus.

Wheeles tried to further rely upon Michael Cross' "stellar" interview as a grounds for his

---

[1] Of further note, while Wheeles attempted to cite to the "community reputation" of Michael Cross as being an important factor in his decision, the jury could have reasonably concluded that such factor was pretext as Wheeles promoted another commander, Jerry Monasmith, that same month who had previously received 20 or more PSU complaints regarding his work within the community. Jerry Monasmith confirmed in his testimony that he had, in fact, received at least 20 complaints, and Bill Cochran testified that as Chief of Police, Wheeles would have been aware of PSU complaints made against his officers as that had been the procedure when Bill Cochran served as Chief.

promotion. However, Wheeles was not present for the interview process. Haltom, who was present, did testify that while Michael Cross performed well in his interview, Cross' interview felt rehearsed. Haltom further testified that an interviewee's performance in a 30-minute interview should not wipe away 20 years of service in the department.

Lastly, Wheeles was adamant in his testimony concerning Colleen Stuart that she was removed from consideration for the Major position because she was marked by a panelist as non-promotable. However, Wheeles later testified that another panelist marked Michael Cross as non-promotable. In fact, unlike the panelists that marked Stuart as non-promotable who were community members and who would not have had knowledge of the innerworkings of the police department, the panelist that marked Michael Cross as non-promotable was Wheeles' own Major, Russell Klumpp. Wheeles inexplicably went on to testify that he did not factor that into his consideration of Michael Cross.

In all of the above ways, the jury was presented substantial and sufficient evidence to find pretext due to the weaknesses and contradictions in Wheeles' alleged non-discriminatory reasons for Michael Cross' promotion.

**Prior Treatment of Plaintiffs and Practices Toward other Female Employees**

The Plaintiffs' evidence also included substantial evidence of prior treatment of the Plaintiffs and other female employees from which to find pretext.

Similar to the Plaintiffs, Jennifer Cross testified that she too was passed over for less qualified male applicants in the same month as the Plaintiffs. Like Michael Cross in the case of the Plaintiffs, there was testimony confirming one of the applicants selected over Jennifer Cross had a checkered reputation within the department. Former Chief of Police, Bill Cochran, testified that Jerry Monasmith (the applicant selected over Jennifer Cross) had less time in command positions than Jennifer Cross, had less education, and did not have a good reputation in the community.

In addition to these two positions, there was additional testimony establishing the Plaintiffs had

been treated in this manner the previous month when Wheeles selected Jamey Haltom for the Deputy Chief position. Former Director of Human Resources, Jacque Russell, testified that Wheeles did not allow either Plaintiff to apply for the Deputy Chief position in November 2021. Instead, Wheeles confirmed that he selected Haltom without any application or interview process. Wheeles and Haltom confirmed in their respective testimony that, at the time of the selection, Haltom had less time in commander rank, less time with the department as a whole, and less education.

Lastly, there was additional evidence concerning the treatment of Plaintiffs post-promotion from which the jury could find pretext. In 2023 when Wheeles was directed to open a new Major position and Plaintiff Harden was promoted, Wheeles admitted that he merely handed her a sealed envelope and told her to read it outside his office. He further testified that he had never engaged in this behavior with any male commander promotion. When the promotional ceremony for Harden finally occurred, Wheeles testified that he was not involved in the ceremony despite that being the regular process and he did not take photographs with Harden's family. Wheeles could not provide a single instance in which this had occurred for a male promotion.

In all of the above ways, the jury was presented substantial and sufficient evidence to find pretext based upon the treatment of the Plaintiffs and other female officers by Wheeles.

**Procedural Irregularities**

The Plaintiffs' evidence also included substantial evidence of procedural irregularities in the promotional process from which to find pretext.

Deputy Director of HR Maisberger testified that a consistent promotional process is important to create a fair and equitable process. As a result, the City implements a standard promotional practice across City departments. However, she further testified that only two departments in the City are not required to follow that practice: the Fire and Police Departments.

Maisberger, as well as former Director Russell, testified that the Police Department should

create diverse panels as diversity among the panel mitigates the risk of discrimination or bias entering the promotional process. Nonetheless, Jennifer Cross, Jacque Russell, Shawn Maisberger, and Jamey Haltom all confirmed that the interview panel used in the 2021 Major promotion was entirely male.

Then, both Maisberger and Russell highlighted their concerns that the irregularities in the interview panel and promotional processes under Wheeles led them to the conclusion that gender might have or did play a role in the 2021 Major promotion. Maisberger testified that by failing to include any females on the interview panel, it created a risk that gender might play a role in the interview process. She noted that all the decision-makers for the 2021 Major position as well as the Deputy Chief promotion which had occurred the previous month were all male.

Going even further, Russell testified she was concerned that the Plaintiffs were not given a fair shot during the promotions under Wheeles. She testified that through competitive processes, females were supposed to have the same opportunities for promotion, but the Plaintiffs were not given the same opportunity once Wheeles began the promotional processes for Deputy Chief[2] and Major, which that was a personal concern of hers. She stated point blank that she felt gender played a role in the decision-making process.

From these irregularities in the promotional process and statements by both the former Director and current Deputy Director of HR, the jury could reasonably infer that the Defendant's stated reasons were pretext and gender did, in fact, have a determinative effect in the Plaintiffs failure to promote.[3]

**Disparity in Qualifications**

Lastly, the Plaintiffs' evidence established the stark disparity in qualifications between the Plaintiffs and Michael Cross from which a jury could reasonably conclude pretext.

The testimony of Jennifer Cross, Bryan Wheeles, and Jamey Haltom confirms that the Plaintiffs

---

[2] Testimony from Bryan Wheeles and Jacque Russell confirmed that Jamey Haltom was hand-selected by Chief Wheeles and the Plaintiffs were given no opportunity to express interest or interview for the Deputy Chief position just weeks before the 2021 Major promotion.

[3] In addition to the irregularities within the promotional process, there was also a substantial amount of testimony highlighting the irregularities with discipline as it related to females versus males. Jacque Russell, Bryan Wheeles, Jamey Haltom and Jerry Monasmith all provided testimony concerning the lack of discipline and the fact that disciplinary findings were not even discussed with male officers regarding complaints of harassment and bullying.

had more education (Masters Degrees and leadership-specific conferences and certifications), more experience across bureaus, more time in the rank of Captain, and had served as commanders in more bureaus than Cross.  Jennifer Cross testified that Michael Cross had the least qualifications of the three applicants.  And former Chief of Police Bill Cochran even testified that both Plaintiffs were not only qualified to serve as Majors but were qualified to serve as Chiefs of Police.  By contrast, the testimony concerning Cross was about his performance failures and poor reputation among the department.  Defendant, with the exception of Wheeles himself, did not bring in a single witness to refute this testimony.  Even the current acting Chief of Police, Jamey Haltom, testified about Cross' reputational concerns for trustworthiness and performance, and Haltom stated that he told Wheeles that he did not like Cross.

     Defendant's motion attempts to paint the picture that the disparity in qualifications (and the other arguments concerning pretext) was simply based on the self-serving statements of the Plaintiffs.  However, not a single piece of evidence discussed in this section, nor the previous sections concerning weaknesses and contradictions, the treatment of the Plaintiffs and other females, or the irregularities in the promotional process makes a single reference to the testimony of either Plaintiff.  Everything discussed above is supported by references to the testimony of current and former employees of the City.  As a result, the record reflects substantial evidence from which the jury could have reasonably concluded the purported justifications were pretext, before the Plaintiffs even took the stand.  In addition to all the evidence described above, the Plaintiffs also provided testimony supporting and expanding upon each category of evidence described above.

     If the Court believes it necessary to outline all the manners in which the Plaintiffs testimony corroborates the above, Plaintiff is willing to supplement this response with further references to the record.  However, for purposes of judicial economy, Plaintiff does not believe this is necessary as the above evidence clearly establishes multiple grounds upon which the jury could find pretext.

### B. Defendant's Motion for New Trial Must be Denied.

Defendant's Motion for New Trial must be denied because the Court committed no error in its gate-keeper function over the evidence and, assuming arguendo that it had, Defendant has failed entirely to establish any way in which it was prejudiced by the alleged error.

A motion for new trial must only be granted where trial errors occurred that "created prejudice and affected a party's substantial rights." *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F. 4th 978, 988 (10th Cir. 2021). Where the appellate court will review the trial court's function as the gatekeeper of evidence, they "review for abuse of discretion the manner in which the district court exercised its…gatekeeper role in making decisions whether to admit or exclude testimony." *Bulter v. AO Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). It will not "disturb a district court's ruling absent [its] conviction that it is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Id.*

> I. *The Court did not allow improper "me too" evidence and Defendant has failed entirely to show prejudicial harm*

As a preliminary matter, there is no question the Court's execution of its gatekeeper function of the "me too" evidence was exercised consistent with its duty and responsibility under the law. To suggest that the Court's consideration of objections and rulings concerning this evidence was arbitrary, capricious, unreasonable, or clearly erroneous completely misrepresents what actually occurred at trial. In relation to the anticipated "me too" evidence, the Court consistently granted Defendant's objections to exclude such evidence so much so that the Plaintiffs ultimately altered the presentation of its evidence as it related to the anticipated "me too" evidence.

While the Court heard argument and made rulings during the pre-trial conference on motions *in limine*, the Court granted several objections during the first witness, Jennifer Cross, and severely limited the topics upon which Cross was allowed to testify to "me too" allegations. Ultimately, the

Court granted Defendant's objections and instructed Plaintiff's counsel that it would not allow any evidence that was not relevant to Wheeles' failure to promote the Plaintiffs in 2021. As a result, Jennifer Cross' "me too" testimony was so limited on the first day of trial that Defendant's only cross-examination of Cross was to confirm that she had been promoted by male supervisors throughout her career, she had been promoted over other males in her career, and what her current salary was. Defendant was so not prejudiced by the testimony, that it asked fewer than five questions during its cross-examination of Cross.

Similarly, prior to the testimony of Kim Hanika, Defendant voiced a lengthy objection stating the anticipated testimony of Hanika would cause a "mini trial" regarding a DEA issue that arose while Wheeles was Deputy Chief. After Defendant voiced its objections to testimony that had not even occurred,[4] the examining attorney for Plaintiff informed the Court that the evidence to which the Defendant was objecting would not be elicited. Then, Hanika's actual testimony, which lasted in total less than fifteen minutes, was completed without objection[5] and the testimony that Defendant discussed in its prospective objection was not referenced or solicited. As a result, Defendant has not preserved any objections to Hanika's testimony. In addition, while Defendant summarily suggests in its motion that Hanika's testimony misled the jury, caused issue confusion, or presented a need for a "mini-trial" concerning the DEA, Defendant again had fewer than ten questions in cross-examination and no "mini-trial" ensued. The totality of Hanika's testimony compared to all the evidence in this case is so minute, it cannot be stated that if her testimony was admitted in error, which Plaintiffs dispute, it had any prejudicial impact on the outcome.

---

[4] Throughout the course of Plaintiff's presentation of evidence, Defendant made objections about testimony it believed who arise before the testimony was ever elicited. The Court noted on several occasions that it could not make rulings about evidence that was not before the Court. Such prospective objections do not preserve claims of error for Defendant.
[5] Plaintiff's notes from trial do not reflect any objections being made during the Hanika testimony. However, Plaintiff directs the Court to review the transcript if it has a different recollection as it is possible an objection could have been missed in the notetaking.

When Plaintiffs' counsel attempted to elicit potential "me too" testimony from Jacque Russell, the Court granted Defendant's objections and completely precluded any testimony from Russell concerning her alleged "me too" evidence against the City. As a result, Defendant has no basis for suggesting Russell engaged in prejudicial "me too" testimony.

In light of these rulings and strict parameters the Court placed on any "me too" evidence, suggesting this Court arbitrarily exercised its gatekeeper function is illogical and unreasonable. Equally important, however, is that Defendant has made no argument as to how it was prejudiced. Instead, it has offered blanket conclusory statements that it was prejudiced as if prejudice can just be presumed. It cannot. Instead, the Defendant's burden includes establishing a specific argument from which the Court can conclude actual prejudice occurred. A review of the specific objections, the testimony that actually occurred rather than what was merely anticipated by Defendant, and the record as a whole clearly shows the Defendant was not prejudiced. There were no "mini-trials;" there were no additional witnesses called to clear up any risk of jury confusion. Instead, the "me too" evidence was mostly excluded by this Court and any testimony that could be characterized as "me too" evidence was practically non-existent.

> II.  The Court's admission of evidence of discrete acts occurring before July 27, 2020 was not improper and Defendant has failed to show prejudice

All evidence admitted that concerned matters occurring prior to July 27, 2020 was properly admitted. The statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim" of discrimination under Title VII. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 2072 (2002) *superseded by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. While it is true that an employment claim may not be compensated before administrative remedies have been exhausted, an employee can use time-barred evidence of prior and subsequent acts "as background evidence in

support of a timely claim." *Haynes v. Level 3 Communications,* 456 F.3d 1215, 1223 (10th Cir.2006) *overruled on other grounds*, *Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012) *overruled on other grounds*, *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1183-86 (10th Cir. 2018); *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) **(**"Consistent with the Court's opinion in *Morgan,* our holding today does not negate the relevance of allegedly retaliatory incidents as to which administrative remedies have not been exhausted.).  Ultimately, **"***a time-barred discrete act is not actionable and cannot be a basis for liability, but it can nonetheless be evidence.*" *King v. Salazar*, CIV05-0575JB/WDS, 2009 WL 1311521 (D.N.M. Mar. 16, 2009) (emphasis supplied).

This Court heard argument regarding the connection to Bryan Wheeles as it pertained to the evidence from Jennifer Cross, Kim Hanika, Jerry Monasmith, and Jacque Russell that occurred prior to July 27, 2020.  In each instance there was clear and substantial connection to the ultimate decision-maker in this matter, Bryan Wheeles.  The testimony of Brent Trout and Bill Cochran that a "Chinese Wall existed" at best creates a credibility issue or factual question for the jury to determine.  It does not, however, make the admission of the evidence arbitrary, capricious, or clearly against the law.  In each instance, the testifying witness was able to tie decisions and actions directly to Wheeles.  The testimony of Trout and Cochran merely shed doubt on Wheeles' involvement.  It does not justify vacating the verdict and granting a new trial.

## V.     Conclusion

Because Defendant has failed to meet its burden to show that it is entitled to Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a) or entitled to a new trial under Rule 59, its motion should be DENIED.

WHEREFORE, Plaintiffs request this Court enter an Order denying Defendants' Renewed Motion for Judgment as a Matter of Law and Motion for New Trial, and for any further relief which this Court deems just and proper.

Respectfully Submitted,

  /s/ **Chris R. Playter**
**PLAYTER & PLAYTER LLC**
Chris R. Playter, KS #29590
Eric S. Playter, KS #23027
7608 Raytown Road
Kansas City, MO 64138
(816) 666-8902 (Main)
(816) 666-8903 (Fax)
eric@playter.com
chris@playter.com

and

**EMPLOYEE RIGHTS LAW FIRM**
**Law Offices of Mark A. Jess, LLC**
Mark A. Jess, KS No. 16525
Christie Jess, MO No. 44919
4 E. Franklin Street
Liberty, MO 64068
Ph:  816.474.4600
Fx:  816.474.4601
mark.jess@employeerightslawfirm.com
christie.jess@employeerightslawfirm.com
*ATTORNEYS FOR THE PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on October 31, 2024 via filing with ECF to:

J. Phillip Gragson, #16103
Kara L. Eisenhut #27055
3649 SW Burlingame Road, Ste. 200
Topeka, KS 66611
785 232-2200 (ph); 232-3344 (fax)
Email: jpgragson@hhmglaw.com
Email: keisenhut@hhmglaw.com
*Attorneys for Defendant*

  /s/ **Chris R. Playter**
*ATTORNEY FOR THE PLAINTIFF*