### In the United States District Court
### for the District of Kansas

_____

Case No. 23-cv-02021-TC

_____

COLLEEN STUART, ET AL.,

*Plaintiffs*

v.

TOPEKA, KANSAS, CITY OF, ET AL.,

*Defendants*

_____

## MEMORANDUM AND ORDER

After a four-day trial, a unanimous jury concluded the Topeka Police Department failed to promote Plaintiffs Colleen Stuart and Jana Harden to the position of Major in 2021 because of their gender. Doc. 113; 42 U.S.C. § 2000e-2(a)(1). Following entry of the jury's verdict, the parties filed post-trial briefs regarding the appropriate calculations of back pay and front pay, Docs. 115 & 120, and the City moved for judgment as a matter of law and a new trial. Doc. 119. For the following reasons, the City's motion for judgment as a matter of law and a new trial is denied, and Plaintiffs shall receive damages in the amounts described below.

### I

### A

Each motion has a different standard that governs resolution. The following describes each applicable standard.

**1.** The City primarily requests judgment as a matter of law. Under Fed. R. Civ. P. 50(a)(1), a court may issue a judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." "Judgment

1

as a matter of law is only appropriate 'if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) (quoting *Riske v. King Soopers*, 366 F.3d 1085, 1088–89 (10th Cir. 2004)). If a court does not grant the party's Rule 50(a) motion during the trial, that party "may file a renewed motion for judgment as a matter of law" post-trial and include an alternate motion for a new trial under Rule 59. Fed. R. Civ. P. 50(b).

When reviewing a renewed motion, a court views the record in the light most favorable to the nonmoving party and does not "weigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusions for that of the jury." *Jensen v. W. Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020). Judgment as a matter of law post-trial is an extraordinary remedy, granted only when a court is "certain the evidence conclusively favors one party." *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 766 (10th Cir. 2019).

In moving for renewed judgment as a matter of law under Rule 50(b), a party "can only reassert the same grounds for judgment as a matter of law that [it] first asserted in [its] pre-deliberation Rule 50(a) motion." *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1131 (10th Cir. 2019). While the "same grounds" standard does not require "technical precision," *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1256 (10th Cir. 2017), it must be clear that a Rule 50(a) motion gave the opposing party an opportunity to respond to the argument before the case was submitted to a jury, *Mountain Dudes*, 946 F.3d at 1133. There is one exception to this rule: A district court may consider the new grounds where the opposing party does not object to new grounds included in a Rule 50(b) motion, and those new grounds relate to the sufficiency of the evidence. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1250 (10th Cir. 2010).

**2.** The City alternatively moves for a new trial. A court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Trial courts have broad discretion in deciding whether to grant a new trial. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). But that discretion is not unlimited: a new trial is warranted only where "errors [at trial] created prejudice and affected a party's substantial rights." *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F.4th 978, 988 (10th Cir. 2021) (citing Fed. R. Civ. P. 61); *Henning v. Union Pac. R. Co.*, 530

F.3d 1206, 1217 (10th Cir. 2008). The party seeking the new trial bears the burden of showing harmful error. *Nosewicz v. Janosko*, 857 F. App'x 465, 468 (10th Cir. 2021); *see also United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999) (motions for a new trial are disfavored). When reviewing a motion for a new trial, a court draws all inferences in the light most favorable to the non-movant. *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019).

**B**

Familiarity with the factual background of this dispute is presumed. *See generally* Doc. 77. In summary, Plaintiffs sued the City of Topeka, Kansas for failing to promote them to the position of Major in 2021. Doc. 1. Instead of promoting Plaintiffs, the decisionmaker, Bryan Wheeles, then Chief of the Topeka Police Department, selected Michael Cross to fill the position. Doc. 48 at 5. The City moved for summary judgment, Doc. 57, which was granted in part and denied in part, Doc. 77. That Order dismissed several claims and parties, leaving only Stuart's and Harden's Title VII failure-to-promote claims against the City. *See* Doc. 77 at 27–28. As a result, Stuart and Harden's sole claim of gender discrimination against the City of Topeka was tried to a jury over the course of four days.

The City orally moved for judgment as a matter of law at the close of Plaintiffs' presentation of the evidence. Doc. 133 at 72; *see also* Doc. 12. The City's oral motion contended that "[t]he only evidence of discrimination . . . is their feeling that since a male got promoted that [they] were discriminated against." Doc. 133 at 73. That motion was denied. *Id.* at 74; Doc. 112 at 2. The jury returned a unanimous verdict, finding that the City violated Title VII by failing to promote Harden and Stuart because of their gender and awarding each Plaintiff $200,000 in compensatory damages. Doc. 113.

The City now renews its motion for judgment as a matter of law, presenting two main arguments. Doc. 119. First, the City argues that Plaintiffs failed to show that the City's stated reasons for not promoting Plaintiffs were *pretextual. Id.* at 4. Second, it contends the admission of certain testimony at trial was erroneous. *Id.*

The jury also returned a unanimous advisory verdict on the issues of front pay and back pay. Doc. 113. When the parties submitted their proposed jury instructions, they disagreed on whether front pay and back pay are issues to be determined by a judge or a jury. Doc. 19 at

16 n.2. But neither party objected to the final verdict form that allowed the jury to provide an advisory verdict on Plaintiffs' entitlement to front pay and/or back pay. *See* Doc. 110 at 37–40. The jury's advisory verdict suggested that Stuart be awarded $35,277.58 in back pay and $42,593.67 in front pay. Doc. 113 at 2. And it suggested that Harden receive $11,059.20 in back pay but no front pay. *Id.* at 4. After the trial, the parties agreed that the parties would submit post-trial briefs regarding front pay and back pay "as to what [they] believe the calculation should be and let the court make its determination." Doc. 134 at 34–35. The City filed a post-trial brief requesting to limit those final amounts to reflect that only one of the two Plaintiffs could have been promoted to Major in 2021 because there was only one open position. Doc. 115. Plaintiffs objected, asking that each receive front pay and back pay awards in accordance with the jury's advisory verdict. Doc. 120.

## II

The City has not identified any error warranting judgment as a matter of law or a new trial. But the City has shown that only one of the two Plaintiffs is entitled to equitable relief.  Accordingly, the City's renewed motion for judgment as a matter of law and for a new trial is denied, but its motion regarding front pay and back pay awards is granted.

### A

The City first seeks judgment as a matter of law and a new trial, asserting that Plaintiffs did not establish pretext and that inadmissible evidence was introduced at trial. Doc. 119. Neither argument warrants relief.

**1.** The City first contends that it is entitled to judgment as a matter of law because Plaintiffs did not meet their burden to show that the City's stated reasons for failing to promote them were pretext for gender discrimination. Doc. 119 at 4–5. That argument misapprehends the procedural posture of the case. The question of whether an employer's stated reasons for making an employment decision were pretextual is one decided at the summary judgment stage as part of the *McDonnell Douglas* framework. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). But "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s]" after a plaintiff survives summary judgment by offering sufficient evidence of pretext. *Reeves v.*

4

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000) (internal quotations omitted). At trial, the "ultimate question is whether the employer intentionally discriminated" against the plaintiff. *Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1270 (10th Cir. 2008).

Plaintiffs met their burden to show pretext at the summary judgment stage. Doc. 77 at 28. As a result, the only question remaining for trial was whether the City's decision not to promote them violated Title VII by intentionally discriminating against them because of their gender. *See Reeves*, 530 U.S. at 146. The jury concluded that the evidence supported that position.

Viewed in the light most favorable Plaintiffs, Plaintiffs introduced evidence sufficient for a jury to conclude that the City intentionally discriminated when it failed to promote them and chose Cross instead. First there was evidence that the male selected—Cross—was far from an obvious choice. Wheeles stated that he promoted Cross for his military experience, his history at the Topeka Police Department, his public speaking and leadership skills, and his reputation in the community. Doc. 133 at 101–02. But Plaintiffs' evidence undermined that position, presenting testimony indicating that a member of the interview panel who considered all the applicants described Cross as "unpromotable," offering evidence that, at the time of the promotion, Wheeles knew Cross had a reputation of being "untrustworthy," and demonstrating that Cross had performance issues at work. Doc. 132 at 38, 86, 95. That evidence "cast sufficient doubt on the City's explanation for its decision" to submit the issue of intentional discrimination to the jury. Doc. 77 at 28 (concluding that Plaintiffs produced sufficient evidence of pretext at the summary judgment stage).

Not only was there reason to doubt Wheeles's belief that Cross was more qualified, there was objective evidence that both Plaintiffs were more qualified to be promoted to the position of Major than Cross. Among other things, both served in more divisions within the department (known as bureaus) than Cross, had longer tenure at the department than Cross, held the rank of Captain for more time than Cross, and had more formal education than Cross. Doc. 132 at 41–42.

The City's attempts to discredit that evidence fails. A defendant may not simply suggest that an employment decision comes down to subjective preferences of the decisionmaker. *Contra.* Doc. 119 at 5–6. It is true that pretext requires more than showing that an employer used some subjective criteria in a promotion decision or that the

plaintiff believes that he or she was more qualified than the successful candidate. *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1218–19 (10th Cir. 2022). But the jury was able to weigh the competing evidence, assess the witnesses' credibility, and follow the agreed upon jury instructions to conclude that the City—through Wheeles—intentionally discriminated against Plaintiffs because of their gender. That conclusion must be respected. *See United Mine Workers of Am. v. Rag Am. Coal Co.*, 392 F.3d 1233, 1237 (10th Cir. 2004) (explaining that post-trial motions do not allow courts to "weigh the evidence, assess witness credibility, or substitute [their] conclusions for those of the jury").

**2.** The City also argues that evidence was erroneously admitted at trial. The type and extent of evidence it addresses is varied and sometimes overlapping. But the motion fails to establish that any of the alleged errors were contrary to the law, much less one that would warrant a new trial.

One category of evidence that the City's motion challenges is the admission of evidence about other employees and supervisors at the Topeka Police Department and evidence regarding events that occurred more than 300 days before Plaintiffs filed an EEOC complaint. Doc. 119 at 14–15. It essentially argues that because the City's summary judgment motion was granted on several claims, including those made by Jennifer Cross, any evidence about the events giving rise to those claims was inadmissible at trial. Doc. 119 at 8–15. But anecdotal evidence that supports a plaintiff's discrimination claim need not be sufficient to establish an actionable claim of discrimination in order to be admissible. *See EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 489–90 (10th Cir. 2006). To the contrary, the evidence is frequently relevant and therefore admissible because it makes the plaintiff's evidence of the decisionmaker's intent more or less likely. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 885 (10th Cir. 2018) (collecting Tenth Circuit cases holding that anecdotal evidence of other employees' discriminatory experiences may be admitted if they "can somehow be tied to the employment actions disputed in the case at hand").

Another category of evidence that the City alleges was improperly admitted is what courts have referred to as "me too" evidence. Doc. 119 at 10. Generally speaking, "evidence that other employees belonging to the same protected class as the plaintiff were also discriminated against" may be admissible to support a plaintiff's claim that his or her supervisor engaged in intentional discrimination. *Isberner v. Walmart*

*Inc.*, No. 20-2001, 2021 WL 4284540, at *3 (D. Kan. Sept. 21, 2021). The admissibility of such evidence depends on whether the supervisor's animus toward a protected group in general "might have affected . . . decisions adverse to [the] plaintiff." *Fassbender*, 890 F.3d at 885 (quoting *Ortiz v. Norton*, 254 F.3d 889, 896 (10th Cir. 2001)). For instance, the Tenth Circuit has found that a witness's anecdotal evidence is sufficiently connected to the plaintiff's circumstances when the witness shares a supervisor and/or when the witness's testimony regards events that happened during a similar time frame as the plaintiff's alleged discrimination. *See, e.g., Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (explaining that anecdotal evidence of discrimination may be admissible if the same supervisors were involved and if the events occurred in the same time frame). Based on this precedent, the parties were advised that "me too" witnesses could testify if it related to Wheeles's intent to discriminate based on gender during the time frame relevant to his failure to promote Plaintiffs. Doc. 132 at 9.

Much of the City's attention in this regard is focused on Jenifer Cross. As noted, she need not have an actionable claim to offer "me too" evidence that is relevant to Wheeles's intent. *BCI Coca-Cola Bottling Co.*, 450 F.3d at 489–90. And she offered specific and recent examples of how Wheeles, her supervisor, treated her differently than her male counterparts. Doc. 131 at 199–207; *see also Fassbender*, 890 F.3d at 885 (finding that an employer's comments about and treatment of other individuals in the protected class supported the plaintiff's discrimination claim). The jury was not required to accept her testimony as true and the City was able to cross examine her so as to show the jury that it should not find her testimony persuasive. But it was admissible because it concerned the decision maker at issue at or around the same time frame and involved many of the same issues. *See Heno*, 208 F.3d at 856.

It is true that Cross also testified beyond this scope and about irrelevant topics. At one point, she testified for over an hour—without any objection—about events other than the 2021 Major promotion before the City finally objected. Doc. 131 at 187. The City cannot complain about the testimony offered without objection. *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F.4th 978, 991 (10th Cir. 2021) (recognizing that failure to object at trial waives a party's ability to rely on that testimony as a basis to obtain a new trial). Nor can it complain about the result of the objection when it was made because not only

was the objection sustained, but Plaintiffs were admonished to focus on only the events relevant to Plaintiffs' promotion. Doc. 131 at 186–87. And each subsequent time her testimony strayed and an objection was made, it was either sustained, *id.* at 191, 196, 198, or Plaintiffs were asked to begin asking questions related to Wheeles's intent "relative to these two plaintiffs." *Id.* at 174–75, 184, 186–87, 199. In other words, the City cannot complain about the evidence to which it did not object nor complain about the testimony that was introduced based on its few objections. *Osterhout*, 10 F.4th at 991.

The City also argues that evidence concerning another officer, Jerry Monasmith, was improperly admitted. Doc. 119 at 12. Several witnesses stated that Monasmith was not disciplined for misconduct while female officers were disciplined for the same conduct. *Id.* Much of this testimony was too attenuated from the issue of Wheeles's intent to discriminate against Harden and Stuart because of their gender. And each time the City objected to testimony concerning Wheeles's treatment of Monasmith, its objections were sustained. Doc. 131 at 198–99, 225–26, 248–49, 253, 256–60; Doc. 132 at 9. But again, the City cannot complain about the admission of evidence where there was no timely objection. *See Osterhout*, 10 F.4th at 991.

Finally, the City generally contends that all of the testimony offered by Kimberly Hanika was erroneously admitted. Doc. 119 at 13. The City complains that she should not have been permitted to testify at all because her testimony about Wheeles's conduct only reflected her personal disputes with Wheeles's wife, Jeralyn, and did not reflect his gender-based animus vis-a-vie Plaintiffs. But the City failed (at trial and in its motion) to provide authority for categorically disqualifying Hanika from taking the witness stand because of her alleged conflict with Wheeles. *See generally* Fed. R. Evid. 601–603. Litigants have the right to call witnesses of their choosing and, as Rule 402 notes, relevant testimony is generally admissible. If the City believed Hanika's specific testimony was inadmissible for any purpose, it was obliged to lodge a contemporaneous objection. *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019). Yet the City only objected once during Hanika's testimony and, even then, the objection was limited to whether she had personal knowledge and an adequate foundation to answer a specific question. Doc. 132 at 137–38. As a result, Hanika was allowed to answer that question only to the extent she had personal knowledge. *Id.* The City has failed to show that this ruling was erroneous—much less that it would warrant a new trial. *See United States v. Mendoza-Salgado*,

964 F.2d 993, 1008 (10th Cir. 1992) (explaining that an objection must be made on the specific ground that it challenges).

\* \* \*

The jury heard sufficient admissible evidence that entitled it to conclude that the City discriminated against Plaintiffs in violation of Title VII's prohibition against gender discrimination. None of the evidence that the City now identifies was erroneously admitted because it was either relevant to the ultimate question of whether the City, through Wheeles, intentionally discriminated against Plaintiffs, or because the City failed to properly object to the testimony it now claims as erroneously admitted. Accordingly, the City has not justified its request for judgment as a matter of law or for a new trial.

**B**

The City also seeks to limit Plaintiffs' front pay and back pay awards. Doc. 115 at 1.[1] Its position is simple: There was only one open position for which the two were considered and, as a result, they cannot both recover for damages even if there was discrimination. Doc. 115 at 2–4. As a result, according to the City, it is improper to award front and back pay for both.

Title VII provides various remedies for a prevailing plaintiff in an employment discrimination case, including compensatory damages, back pay, and front pay. 42 U.S.C. §§ 2000e-5(g)(1), 1981a(1); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847–48 (2001). A jury may award compensatory damages, but front pay and back pay are equitable remedies to be awarded by a court. *McCue v. State of Kan., Dep't of Human*

---

[1] The City's motion is styled as a motion for reconsideration of a summary judgment ruling denying the same argument that the City makes at an earlier stage in the case. *See* Doc. 115. The City's motion is construed as a post-trial brief regarding the amount of front pay and/or back pay the plaintiffs should receive in light of the jury's verdict on liability. *See* Doc. 77 at 34 (denying the City's motion without prejudice because "[t]his issue is more appropriate for post-trial briefing"); Doc. 134 at 34–35 (indicating the parties' agreement to file post-trial motions regarding front pay and back pay awards). As a result, the typical standard addressing motions for reconsideration under Federal Rule of Civil Procedure 59 does not apply here, and the City's motion is treated as a post-trial brief regarding the calculation of Title VII equitable relief *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1033–45 (10th Cir. 2021).

*Res.*, 165 F.3d 784, 791–92 (10th Cir. 1999); *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1048 (10th Cir. 2021) (citing 42 U.S.C. § 2000e-5(g)(1) (applying this principle to front pay and back pay and reiterating that "while it is common practice to leave the backpay calculation to the jury . . . Title VII clearly identifies backpay as equitable relief"). Juries may, however, suggest whether and how much equitable relief a plaintiff should receive in an advisory capacity. *See Reed v. Mineta,* 438 F.3d 1063, 1067 (10th Cir. 2006) (approving of the district court's approach to ask the jury to advise on the amount of equitable relief while retaining the ultimate discretion to decide the amount of relief awarded). Back pay and front pay both represent "compensation for lost wages over a continuum of time." *Tudor*, 13 F.4th at 1040. The difference is that back pay runs from "the time of deprivation" to the end of trial, while front pay begins at the time of judgment and ends upon a set date in the future. *Id.* Calculating such awards should be done "with the aim to make plaintiffs whole without creating a windfall." *Id.* at 1041.

Neither the Supreme Court nor the Tenth Circuit has addressed how equitable relief like front pay and back pay should be calculated in a failure-to-promote case when there are more prevailing plaintiffs than available promotions. *See Medina v. Harvey*, 423 F. Supp. 2d 1227, 1229 (D.N.M. Mar. 13, 2006). As a result, resort to the foundational principles of equitable relief is appropriate. For instance, the Supreme Court has recognized that Title VII remedies should be formulated to recreate "the conditions and relationships that would have been" but for the defendant's discriminatory conduct. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 372 (1977); *see also Pitre v. W. Elec. Co.*, 843 F.2d 1262, 1274–75 (10th Cir. 1988). And the Tenth Circuit has explained that "a causal connection between the remedy and the wrongful act must exist—the notion that the award should compensate injuries sustained *because of* the discrimination demands as much." *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1207 (10th Cir. 2021) (emphasis in original). Moreover, the Tenth Circuit has explained that establishing an equitable remedy under Title VII must be done "with the aim to make plaintiffs whole without creating a windfall." *Tudor*, 13 F.4th at 1041.

There are at least two issues to be resolved. The first one is relatively simple. But for the City's unlawful discrimination, only one Plaintiff would have been promoted to Major in 2021. By awarding each individual plaintiff damages, the jury presumably accepted that

one of them would have been selected but for the unlawful discrimination. And the evidence, viewed in the light most favorable Plaintiffs, supports that notion.

That conclusion is unremarkable. If each of the two Plaintiffs could recover the full amount that she would have earned as Major had she been promoted, then Plaintiffs' remedies would extend beyond "the conditions and relationships that would have been had there been no unlawful discrimination." *Teamsters*, 431 U.S. at 372; *see also Harbison v. Goldschmidt*, 693 F.2d 115, 116 (10th Cir. 1982) (holding that even though the defendant was found to have racially discriminated against the plaintiff in the promotion process, the plaintiff needed to show that he ultimately would have been promoted but for the unlawful discrimination to receive the equitable relief of a retroactive promotion); *Medina*, 423 F. Supp. at 1230 (applying *Teamsters* and *Harbison* to hold that only the plaintiff who would have been promoted absent unlawful discrimination was entitled to equitable relief). Awarding front pay and back pay to each Plaintiff as if she had a 100% chance of promotion would make the City liable for more than what its unlawful discrimination caused, which would result in a "windfall" to Plaintiffs. *Tudor*, 13 F.4th at 1041; *see also Arnold v. U.S. Dep't of Interior*, 213 F.3d 193 (5th Cir. 2000) (finding that although three plaintiffs proved gender discrimination, only those who would have received the job but for discrimination could recover).

The second question—which of the two plaintiffs is entitled to the equitable recovery—is more difficult. When it is possible to discern which plaintiff would have received a promotion but for an unlawful employment practice, that plaintiff should recover any applicable front pay or back pay, but the other plaintiffs should not be granted the same equitable relief. *Medina*, 423 F. Supp. 2d at 1230; *Dougherty v. Barry*, 869 F.2d 605, 615 (D.C. Cir. 1989). But where this is not possible, courts have formulated pro rata remedies by giving each plaintiff a proportionate share of relief. *United States v. City of Miami*, 195 F.3d 1292 (11th Cir. 1999); *Albright v. City of New Orleans*, 208 F. Supp. 2d 634 (E.D. La. 2002).

In this case, the evidence at trial suggested that Jana Harden was more likely to have been promoted to Major in 2021 over either Michael Cross or Colleen Stuart but for the City's unlawful discrimination. Testimony covered the City's interview process and the interviewer's evaluation of each candidate's performance in answering questions. Doc. 132 at 77–78, 85, 105, 204–05; Doc. 133 at 97–99;

11

129–132. All three community member panelists in the interview
scored Harden as "promotable." Doc. 132 at 76–78. But two panelists
concluded that Stuart was "not ready for promotion to [M]ajor." *Id.* at
232–233. And when a Major position became available in 2023, the
Topeka Police Department selected Harden to fill that position, pro-
moting her to Major. *Id.* at 11. Stuart is still in the position of Captain.
*Id.* at 163. These facts suggest that Harden would have been selected
to fill the Major position in 2021 but for the City's unlawful discrimi-
nation. *See Patterson v. Greenwood Sch. Dist. 50*, 696 F.2d 293, 295 (4th
Cir. 1982) (finding that a difference in interview qualifications, testi-
mony from a decisionmaker, and the employer's subsequent promo-
tion decisions are sufficient to show whether a plaintiff would have
been promoted to an open position but for unlawful discrimination).
As a result, Harden is the only plaintiff eligible for equitable relief in
the form of front pay or back pay.

After trial, the jury submitted a verdict form that included an advi-
sory verdict regarding front pay and back pay. Doc. 113. But the jury's
advisory awards are just that—advisory. That means it is still necessary
to determine whether Harden is entitled to equitable relief, and if so,
how much she should be awarded. *See Dilley v. SuperValu, Inc.*, 296 F.3d
958, 965–66 (10th Cir. 2002) (explaining that courts are "obligated to
make [their] own findings" regarding back pay when the jury's verdict
is advisory).

The jury returned an advisory verdict of $11,059.20 in back pay
and no front pay. This fairly and accurately reflects Harden's lost wages
over the period of time between when the City failed to promote her
in 2021 to when she was promoted fifteen months later. *See Tudor*, 13
F.4th at 1040 (explaining that back pay and front pay represent "com-
pensation for lost wages over a continuum of time"). At trial, Harden
produced evidence showing that her salary in 2021 when she was de-
nied the promotion to Major was $120,942. Doc. 133 at 49. She further
testified and produced evidence that her salary as Major is $127,854.
*Id.* The difference in her salary is thus $6,912 annually and $576
monthly. Fifteen months passed between when the City failed to pro-
mote Harden in 2021 and when it promoted her in 2023. *Id.* at 50.
Harden did not provide any evidence suggesting that her salary would
be different had she been promoted in 2021 rather than in 2023. So,
for the fifteen months between those two events, Harden was denied
$8,640 in wages. *Id.* Harden also presented evidence at trial showing
that her employee benefits amount to 28% of her salary. *Id.* at 50–51.

Applying that to the $576 monthly difference in her salary as Captain and Major, she receives $161.28 each month in employee benefits than she did before she was promoted. *Id.* at 51. Over the course of fifteen months, that amounts to $2,419 of lost benefits in addition to the $8,640 of lost wages. *Id.* Taking those amounts together, Harden is entitled to $11,059.20 in back pay—the total amount of her lost wages and benefits between the City's discriminatory failure to promote and her ultimate promotion to Major. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 965–66 (10th Cir. 2002) (affirming back pay award that compensated the plaintiff for lost wages between the date of the adverse employment action and the date of the verdict).

While Harden is entitled to back pay, she is not entitled to front pay. This is because she was promoted to Major before trial. She did not produce any evidence suggesting that there is a difference in her current salary or benefits than what she would be receiving had she been promoted fifteen months sooner. Because front pay begins at the time of judgment, when Harden was already in the position of Major, an award of front pay would put her in a position more favorable than what she "would have held but for the discrimination." *Hayes*, 12 F.4th at 1206.

Plaintiffs' arguments to the contrary do not change this result.[2] They first argue that the City's motion should be denied because the City did not object to the final jury instructions that addressed front pay and back pay awards. Doc. 120 at 1–2. But the City's failure to object to those instructions does not require that the jury's advisory verdict be adopted without review. To the contrary, courts have an independent obligation to determine whether a plaintiff should receive front pay or back pay and, if so, how much. *See Dilley*, 296 F.3d at 965–66). Consequently, the City needed not object to the jury instructions allowing advisory verdicts because its argument does not depend on the sufficiency of those instructions.

In addition, the City has not waived its arguments regarding Plaintiffs' front pay and back pay awards because it was explicitly directed to raise these arguments in a post-trial motion after it raised them in

---

[2] Plaintiffs also attempt to rebut the City's alternative argument to limit how much front pay Stuart may receive, if she is entitled to any. Doc. 115 at 3–4. Because Stuart is not entitled to front pay, it is unnecessary to address that argument.

its summary judgment motion. Doc. 77at 34. That is exactly what the City did here.

Plaintiffs' second argument also fails. Although it is not entirely clear what they are arguing, it appears that they seek the benefit of a rule that any uncertainty should be resolved in their favor, presumably such that they could both recover equitable relief. Doc. 120 at 2. But Plaintiffs do not explain what uncertainty, if any, exists nor the basis for such a rule that would permit double-recovery. As a result, this argument fails. *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1082 n.7 (10th Cir. 2006) (considering an argument forfeited where the party did not support it with legal authority or argument).

## III

For the foregoing reasons, the City's Renewed Motion for Judgment as a Matter of Law and its Motion for New Trial are DENIED. Each Plaintiff shall be awarded $200,000 in compensatory damages, Plaintiff Jana Harden shall be awarded $11,029.00 in back pay and no front pay, and Plaintiff Colleen Stuart shall not be awarded front pay or back pay.

It is so ordered.

Date: April 22, 2025          _s/ Toby Crouse_____
                             Toby Crouse
                             United States District Judge